**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-01503-WJM-MEH

EDWARD E. BURR,

      Plaintiff,

v.

SHAEL MOYER,

      Defendant.

---

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

      Plaintiff Edward E. Burr ("Plaintiff" or "Burr") brings a single claim for breach of contract against Defendant Shael Moyer ("Defendant" or "Moyer"). (ECF No. 1.) Before the Court are the parties' cross-Motions for Summary Judgment. (ECF Nos. 25 & 27.) For the reasons set forth below, Plaintiff's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied.

### I. LEGAL STANDARD

      Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

In early 2010, Plaintiff Edward Burr was the owner of residential property located at 41600 RCR 38A, Steamboat Springs, Colorado (the "Property"). (ECF No. 1 ¶ 6.) On January 6, 2010, Defendant Shael Moyer tendered an offer to purchase the property, in the form of a written Contract to Buy and Sell Real Estate ("Contract"). (ECF No. 25-1[1].) The parties exchanged counter proposals and, on January 15, 2010, they entered into a contract to buy and sell the Property. (ECF No. 25-4.) Pursuant to the terms of the Contract, Defendant tendered $100,000 in earnest money ("Earnest Money") to the title company, Stewart Title. (ECF No. 25-5.)

Defendant had the Property professionally inspected on January 24, 2010. (ECF No. 25-10.) The inspector found evidence of prior water damage but did not find any

---

[1] The parties have both attached the majority of the relevant documents to their respective Motions for Summary Judgment. (*See* attachments to ECF Nos. 25 & 27.) For consistency, the Court will primarily refer to the documents as they are attached to Plaintiff's Motion. (ECF No. 25.)

active leaks. (*Id.*)  The inspection revealed a disagreement about the Property's square

footage, which caused the parties to renegotiate certain terms in the Contract.  On

February 12, 2010, the parties entered into an Agreement to Amend/Extend Contract

that set the final purchase price as $1,960,250.00 and extended the closing date until

February 26, 2010.  (ECF No. 25-11.)  The remainder of the terms material to the

instant Motions were unchanged.  The Court will refer to the January 6, 2010, January

15, 2010, and February 12, 2010 documents collectively as the "Agreement."

On February 24, 2010, Plaintiff executed a deed that purported to transfer his

interest in the Property to a trust that had been established by Defendant (the "Deed").

(ECF No. 25-14.)  Plaintiff signed the Deed in Duval County, Florida in the presence

Laura Zur Gersteck, a registered notary public.  (*Id.*)  Ms. Zur Gersteck acknowledged

the Deed but failed to put her notary stamp on the document.  (*Id.*)

Plaintiff overnighted the Deed to Stewart Title, which received it on February 25,

2010.  (ECF No. 25-13 at 4.)  Without the notary's stamp, Stewart Title could have

proceeded with the closing and recorded the Deed.  (*Id*. at 8.)  However, it could not

issue title insurance without the stamp, so Stewart Title sent the Deed back to Ms. Zur

Gersteck.  (*Id.*)  She affixed her stamp and returned the Deed to Stewart Title on March

3, 2010.  (*Id.*)

On the morning of February 26, 2010, Defendant's real estate agent, Doug

Labor, visited the Property for a final walk-through prior to closing.  (ECF No. 25-12 at

8.)  Labor found that there was a significant amount of water leaking down the wall in

the hallway and through a light in the bathroom into the bathtub.  (*Id*. at 8-9.)  Labor

went outside and noticed that an ice dam had formed on the roof. (*Id*. at 13.)

Labor called Nick Metzler, Plaintiff's real estate agent, and informed him of the leak. (ECF No. 25-12 at 11.) Labor then sent Metzler an e-mail stating: "Due to the roof leak that materialized today at 41600 RCR 38A, Shael Moyer is postponing closing until additional information regarding the repair of the roof is known. This information should be provided at the beginning of next week, when a new closing date should be established. Please confirm that this is agreeable with Mr. Burr." (ECF No. 25-16.) Metzler responded with an e-mail stating, in pertinent part: "Ed is fine with extending the closing until Monday, yet conditional on getting confirmation from the buyer that he is okay with moving forward to closing on Monday (or Tuesday latest) as Ed has moving truck going right now. Please confirm". (ECF No. 25-17.) Labor forwarded to Metzler and e-mail from Defendant's husband[2] stating: "sounds good to close on Monday, conditional on the credit to buyer of repair costs, not heated wire or temporary patch job though." (ECF No. 25-18.)

On Monday, March 1, 2010, Defendant's husband traveled to Steamboat Springs. (ECF No. 31-4 at 2.) He went to the Property to personally assess the damage caused by the water leak. (*Id*. at 4-6.)

On Tuesday, March 2, 2010, Metzler e-mailed Labor regarding the status of the transaction. (ECF No. 25-20.) He communicated Plaintiff's belief that Defendant was already in default and warned that Plaintiff's attorney would take over the transaction if

---

[2] Though not a party to the Agreement, neither party has challenged whether Defendant's husband had the authority to act on her behalf. Thus, the Court assumes that he had such authority and attributes Defendant's husbands actions and statements to Defendant.

closing was not completed.  (*Id.*)  In response to this email, Defendant's husband met with attorneys in Steamboat Springs.  (ECF No. 31-4 at 8.)  At 11:05 p.m. on March 2, 2010, Defendant sent an e-mail to Metzler purporting to terminate the Agreement based on the damage to the Property.  (ECF No. 25-21.)

Plaintiff ultimately expended $22,271.11 to repair the roof and the associated damage to the interior of the Property.  (ECF No. 25-23.)

## III.  ANALYSIS

Plaintiff alleges that Defendant's failure to close the transaction was a breach of contract.  (ECF No. 1.)  The elements for a breach of contract claim in Colorado are: (1) existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform contract by the defendant; and (4) damages to the plaintiff.  *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). In this case, the parties agree that there was a contract but dispute whether either or both parties failed to perform certain portions of the contract.

Under Colorado law,[3] the interpretation of a contract is generally a question of law for the Court.  *See Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503, 1514 (D. Colo. 1992); *Holland v. Board of County Comm'rs*, 883 P.2d 500, 505 (Colo. App. 1994) The primary goal of contract interpretation is to determine and give effect to the intent of the parties as it existed at the time the contract was executed.  *Engineered Data Prods., Inc. v. Nova Office Furniture, Inc.*, 849 F.Supp. 1412, 1417 (D. Colo.

---

[3]  Because the Court has jurisdiction over this case based diversity of the parties, it applies the substantive law of the forum state, *i.e.*, Colorado.  *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216-17 (10th Cir. 2011).

1994); *Main Elec., Ltd. v. Printz Corp.*, 980 P.2d 522, 526 (Colo. 1999) ("The parties'

intention when drafting a contract governs the interpretation of that contract.").

"Unambiguous contract provisions must be construed to give effect to their plain

meaning." *Omnibank Parker Rd., N.A. v. Employers Ins. of Wausau*, 961 F.2d 1521,

1523 (10th Cir. 1992).  "The meaning of a contract is found by examination of the entire

instrument and not by viewing clauses or phrases in isolation. Each word in an

instrument is to be given meaning if at all possible." *United States Fidelity & Guar. Co.*

*v. Budget Rent–A–Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992).  Finally,

"[c]onstruction of a contract should be reasonable and not lead to an absurd result."

*Engineered Data Prods., Inc.*, 849 F.Supp. at 1417.

   The only issue in this case is which party is entitled to the Earnest Money.

Section 21 is the provision of the Agreement that governs default and the remedies for

default.  It provides:

> 21. **TIME OF ESSENCE, DEFAULT AND REMEDIES**.
> Time is of the essence hereof.  If any note or check
> received as Earnest Money hereunder or any other
> payment due is not paid, honored or tendered when
> due, or if any obligation hereunder is not performed or
> waived as herein provided, there shall e the following
> remedies:
>
> 21.1 **If Buyer is in Default**:
>
> . . .
>
> > 21.1.2. **Liquidated Damages**.  All Earnest
> > Money (whether or not paid by Buyer) shall be
> > forfeited by Buyer, paid to Seller, and retained
> > by Seller.  Both parties shall thereafter be
> > released from all obligations hereunder.

. . .

> 21.2   **If Seller is in Default**: Buyer may elect to treat
> this Contract as canceled, in which case all
> Earnest Money received hereunder shall be
> returned and Buyer may recover such
> damages as may be proper, or Buyer may
> elect to treat this Contract as being in full force
> and effect and Buyer shall have the right to
> specific performance or damages, or both.

(ECF No. 25-1 at 9.)

Thus, the Court must determine which party defaulted on the Agreement. It is

undisputed that Defendant refused to close the transaction, which would constitute a

breach of contract.  *See Hornick v. Bruce*, 2007 WL 8392, *10 (D. Colo. Jan. 2, 2007)

(refusal to close is breach of contract).  However, Defendant contends that she was

permitted to terminate the Agreement pursuant to Section 19 because Plaintiff failed to

repair the damage to the Property prior to closing.  (ECF No. 27 at 9-10.)  Defendant

also argues that Plaintiff failed to produce "good and sufficient" deed prior to closing, as

he was required to do by Section 13 of the Agreement.  (*Id*. at 12-13.)  The Court will

address each of these arguments in turn below.

**A.     Delivery of Deed**

Section 13 of the Contract provides: "Seller shall execute and deliver a good and

sufficient General Warranty deed to Buyer, at Closing, conveying the Property free and

clear of all taxes except for the general taxes for the year of Closing."  (ECF No. 25-1 at

7.)  Defendant argues that Plaintiff failed to timely produce a "good and sufficient"

general warranty deed in violation of Section 13 of the Contract because, as of

February 26, 2010—the original closing date—Stewart Title did not have a properly

notarized deed.  (ECF No. 27 at 12-13.)  Plaintiff contends that the Deed he produced

satisfied Section 13 even though it lacked a notary's stamp. (ECF No. 34 at 12-15.)

The phrase "good and sufficient" is not defined in the Agreement.  Giving these

words their plain meaning and viewing them in the context of the entire Agreement, *see*

*United States Fidelity & Guar. Co.*, 842 P.2d at 213, the Court finds that, in order to be

"good and sufficient", the deed needed to legally convey the Property from Plaintiff to

Defendant free and clear of all taxes.  Therefore, whether Plaintiff satisfied his

obligation under Section 13 of the Contract turns on whether Colorado law requires a

deed to be notarized in order to be valid conveyance of a property interest.

 "In Colorado . . ., unless there is an express provision to the contrary, a deed of

real estate to be effective as a conveyance or transfer of real estate, as between

grantor and grantee, need not be acknowledged[4] at all."  *American Nat. Bank v.*

*Silverthorn*, 287 P. 641, 342 (Colo. 1930).  Defendant has failed to cite an express

provision in Colorado law that requires acknowledgment of a deed such as that

executed by Plaintiff in this case.  Rather, Colorado law provides only that a deed "may

be acknowledged."[5]  Colo. Rev. Stat. § 38-30-113(b).

---

[4] "An acknowledgment is a manner of authenticating an affidavit or other instrument by showing that it was the uncoerced act of the person executing it."  *Otani v. District Court*, 662 P.2d 1088, 1090 (Colo. 1992).  Having a document signed by a notary is one permissible form of an acknowledgment.  Under Colorado law, a notary public from another jurisdiction may validly acknowledge a document.  Colo. Rev. Stat. § 12-55-203 ("Notarial acts may be performed outside this state for use in this state with the same effect as if performed by a notary public of this state.").

[5] Instead of making the deed *per se* invalid, the lack of acknowledgment on a deed appears to affect the evidentiary weight to be afforded the document.  Colorado law provides that an acknowledged deed is *prima facie* evidence that the grantor is who he purports to be

In this case, the Deed was acknowledged by Ms. Zur Gersteck, even if it was not properly notarized.  Ms. ZurGersteck signed the Deed under the following the statement:  "The foregoing instrument was acknowledged before me this 24th day of February, 2010, by Edward E. Burr."  (ECF No. 27-25.)  It is undisputed that Plaintiff Plaintiff signed the Deed in front of Ms. Zur Gersteck, a notary public licensed in the State of Florida.  It is also undisputed that the Deed properly described the Property to be sold, properly identified the Grantor/Plaintiff and the Grantee/Defendant's trust, and was dated February 26, 2010, the Closing Date in the original Contract.  (*Id.*)

Defendant argues that the Ms. ZurGersteck's failure to affix her notary's stamp on the Deed means that the Deed was not "good and sufficient" so as to satisfy Section 13 of the Contract.  The Court disagrees.  Colorado law does not require that a deed conveying property be notarized, let alone notarized with an affixed notary's stamp.  Stewart Title's representative has stated that the lack of the notary's stamp would not have prevented the closing from moving forward. (ECF No. 27-27 at 2.)  Defendant has not come forward with any competent evidence controverting this assertion.  Thus, the Court finds that the Deed produced to Stewart Title on February 25, 2010 was "good and sufficient" within the meaning of Section 13 of the Agreement.

Defendant also argues that the Deed was not "good and sufficient" because Stewart Title would not issue title insurance until the notary affixed her stamp to it.

---

and that he signed the deed freely and voluntarily.  Colo. Rev. Stat. § 38-35-101(3)(a).  On the other hand, an unacknowledged deed may require additional evidence of execution and delivery before it can be admitted into evidence. *Friend v. Stancato*, 342 P.2d 643, 646 (Colo. 1959).  The purpose of an acknowledgment is to "prove the execution of the conveyance, so as to insure its authenticity when presented for registration, and to enable it to be used in evidence without further proof of its execution by the grantor." *Id.*

Section 7 of the Contract requires that the "Seller shall cause the title insurance policy

to be issued and delivered to Buyer as soon as practicable at or after Closing."  (ECF

No. 25-1 at 4.)  There is no reference in the Contract linking the "good and sufficient"

deed requirement in Section 13 with the issuance of title insurance in Section 7.

Moreover, Plaintiff was permitted under the express terms of the Agreement to provide

the title insurance policy after closing.  (*Id.*)  Thus, any failure on the part of Plaintiff to

satisfy the terms of Section 7 prior to closing would not have justified or excused

Defendant's failure to close the transaction.

Because Plaintiff produced a "good and sufficient" deed to Stewart Title in

advance of closing, the Court finds that he satisfied his obligations set forth in Section

13 of the Agreement.

**B.     Damage to the Property**

Defendant also argues that Plaintiff failed to meet his obligations under Section

19 of the Agreement.  (ECF No. 27 at 10-11.)  Section 19 provides:

> 19.    **CAUSE OF LOSS, INSURANCE; CONDITION OF,
> DAMAGE TO PROPERTY AND INCLUSIONS AND
> WALKTHROUGH**.  Except as otherwise provided in
> this Contract, the Property, Inclusions or both shall be
> delivered in the condition existing as of the date of
> this Contract, ordinary wear and tear excepted.
>
> 19.1  **Causes of Loss, Insurance**.  In the even the
> Property or Inclusions are damaged by fire, other
> perils or causes of loss prior to Closing in an amount
> of not more than three (3) percent of the total
> Purchase Price, Seller shall be obligated to repair the
> same before Closing Date (§ 2.3).  In the event such
> damage is not repaired within said time or if the
> damages exceed such sum, this Contract may be
> terminated at the option of Buyer by delivering to

> Seller written notice of termination on or before
> Closing.  Should Buyer elect to carry out this Contract
> despite such damage, Buyer shall be entitled to a
> credit at Closing for all insurance proceeds that were
> received by the Seller . . . resulting from such damage
> to the Property and Inclusions, plus the amount of
> any deductible provided for in such insurance policy. .
> .

(ECF No. 25-1 at 8.)

The water damage to the roof and the house that occurred on February 25-26,

2010 ultimately cost Plaintiff $22,273.11 to repair.  (ECF No. 25-23.)  Because this

amount is less than three percent of the purchase price, under Section 19, Plaintiff was

obligated to repair the damage prior to closing.  It is undisputed that Plaintiff did not

make the repairs before closing.  Accordingly, Section 19 permitted Defendant to either:

(1) terminate the Agreement "by delivering to Seller written notice of termination on or

before Closing"; or (2) proceed with the transaction and receive certain credits at

closing.  (ECF No. 25-1 at 8.)

The closing date in the Agreement was February 26, 2010.  (ECF No. 25-11.)

When the property damage was discovered by her agent that morning, Defendant

informed Plaintiff that she was "postponing closing until additional information regarding

the repair of the roof is known.  This information should be provided at the beginning of

next week, when a new closing date should be established."  (ECF No. 27-14.)  This e-

mail communication does not indicate that Defendant wished to terminate the

Agreement.  Thus, Defendant did not invoke her right to terminate under Section 19 on

or before February 26, 2010, the closing date in the Agreement.

Defendant did not deliver her written notice of termination to Plaintiff until 11:05

p.m. on March 2, 2010. (ECF No. 21-21.) Defendant contends that this termination was proper under Section 19 because the parties had agreed to extend the closing date. (ECF No. 27 at 11.) On February 26, 2010, after receiving Defendant's request to postpone closing, Plaintiff sent notice through his agent that he was "fine with extending the closing until Monday, yet conditional on getting confirmation from the buyer that he is okay with moving forward to closing on Monday (or Tuesday latest)." (ECF No. 27-15.) Defendant's husband replied "sounds good to close on Monday, conditional on the credit to buyer of repair costs, not heated wire to temporary patch job though." (ECF No. 27-16.)

The Court questions whether through this exchange of e-mail messages the parties had a true meeting of the minds sufficient to constitute a new contract or agreement to extend the closing date. *See Industrial Prods Int'l v. Emo Trans., Inc.*, 962 P.2d 983, 988 (Colo. App. 1997) (meeting of the minds as to all material terms is an essential element of contract formation). Both parties condition their extension of the closing date on what Plaintiff will credit to Defendant for the property damage and they appear to describe differently what those credits will be: Plaintiff says that he will credit the "amount necessary to repair the roof" while Defendant requests a "credit to buyer of repair costs". (*Compare* ECF No. 27-15 with 27-16.) The term "repair costs" could easily encompass more than just the cost to replace the roof, as Defendant's agent observed damage to the drywall and other aspects of the interior of the house. (ECF No. 27-1 at 10.) Thus, it appears likely that the parties' exchange of e-mail messages did not form a new contract that extended the closing date.

However, even *if* this exchange was a contract that modified the closing date in

the Agreement, the new closing date agreed to by the parties was March 1, 2010.

Plaintiff offered to close on either Monday or Tuesday and Defendant accepted the

offer by stating that he was "good to close on Monday."  (ECF Nos. 27-15 & 27-16.)

Thus, to the extent there was an extension of the closing date, it was extended to

Monday, March 1, 2010 at the latest.  Defendant did not provide notice of her intent to

terminate the Agreement on or before March 1, 2010 and, therefore, she waived her

right to terminate under Section 19 of the Contract.

Defendant has failed to show that Plaintiff failed to perform any of his obligations

under the Agreement.  Plaintiff has shown that Defendant's failure to close the

transaction was nonperformance.  Accordingly, the Court finds that Defendant defaulted

on the Agreement and is entitled to receive the Earnest Money as liquidated damages

pursuant to Section 21.1.2 of the Agreement.

**C.      Attorneys' Fees**

Plaintiff also moves for attorneys' fees pursuant to Section 22 of the Contract.

(ECF No. 25 at 19.)  Section 22 provides: "In the event of any arbitration or litigation

relating to this Contract, prior to or after Closing Date (§ 2.3), the arbitrator or court shall

award to the prevailing party all reasonable costs and expenses, including attorney and

legal fees."  (ECF No. 25-1 at 9.)  As set forth above, the Court has found that

Defendant defaulted on the Agreement and that Plaintiff is entitled to receive the

Earnest Money as liquidated damages.  Therefore, Plaintiff is the prevailing party in this

action and, pursuant to Section 22 of the Agreement, entitled to recover his costs and

expenses, including reasonable attorney and legal fees.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Plaintiff's Motion for Summary Judgment (ECF No. 27) is GRANTED;

2.     Defendant's Motion for Summary Judgment (ECF No. 25) is DENIED;

3.     Plaintiff is awarded the Earnest Money of $100,000;

4.     Within fourteen days of the date of this Order, Plaintiff shall file a motion for costs and expenses with supporting documentation showing the reasonableness of such costs and expenses;

5.     All current settings, including without limitation the Final Trial Preparation Conference scheduled for March 27, 2012 and the Bench Trial scheduled to begin on April 18, 2012, are VACATED; and

6.     The Clerk shall enter judgment in favor of Plaintiff for $100,000 plus costs and expenses, the amount of which shall be determined after entry of judgment.

Dated this 2nd day of February, 2012.

BY THE COURT:

_____

William J. Martínez
United States District Judge

14